```
          IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF OHIO
                    EASTERN DIVISION
```

**DOROTHY BRAOUDAKIS,**

        **Plaintiff,**

   vs.                                                 **Civil Action 2:10-CV-059**
                                                              **Judge Frost**
                                                               **Magistrate Judge King**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

## REPORT AND RECOMMENDATION

This is an action instituted under the provisions of 42 U.S.C. §§ 405(g), 1383, for review of a final decision of the Commissioner of Social Security denying plaintiff's applications for disability insurance benefits and supplemental security income. This matter is now before the Court on *Plaintiff's Statement of Specific Errors*, Doc. No. 14, and the Commissioner's *Memorandum in Opposition*, Doc. No. 18.

Plaintiff Dorothy Braoudakis filed her applications for benefits on August 29, 2005, alleging disability as of August 19, 2004, by reason of physical impairments. She amended her date of onset of disability to August 2005 at the administrative hearing. *A.R.* 245-46. The applications were denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

On April 13, 2009, plaintiff, represented by counsel, appeared and testified at the administrative hearing, as did Steven S. Rosenthal, who testified as a vocational expert. In a decision dated

June 29, 2009, the administrative law judge found that plaintiff's severe impairments consist of lumbar degenerative disc disease, diabetes mellitus, atherosclerotic heart disease ("ASHD"), status post myocardial infarction and three vessel coronary artery bypass graft, hypertension, hyperlipidemia, rosacea and mild obesity. *A.R.* 17. The administrative law judge went on to find that plaintiff's impairments neither meet nor equal a listed impairment and leave her with the residual functional capacity to perform a reduced range of light work. *A.R.* 22-29. Relying on the testimony of the vocational expert, the administrative law judge found that plaintiff's residual functional capacity permits her performance of her past relevant work as a food assembler, service station cashier and retail cashier. *A.R.* 29. The administrative law judge therefore concluded that plaintiff is not disabled within the meaning of the Social Security Act. *A.R.* 30.

That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on November 29, 2009. *A.R.* 5-7.

Pursuant to 42 U.S.C. § 405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003); *Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve

conflicts in the evidence or questions of credibility.  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole.  *Kirk*, 667 F.2d at 536.  If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990)(citing *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983)), and even if substantial evidence also supports the opposite conclusion.  *Longworth*, 402 F.3d at 595.

Plaintiff was sixty-one years old at the time the administrative law judge issued her decision.  *A.R.* 30, 45, 248.  She attended school through the eighth grade and received training in food preparation.  *A.R.* 248-249.  She has prior relevant work experience as a housekeeper, caterer/helper, supervisor of food services, retail cashier, child monitor, fast food worker, food assembler/prep, janitor and supervisor of housekeeping.  *A.R.* 59, 288-289.

On August 11, 2004, plaintiff was seen at The Community Health Center for complaints of back pain aggravated by a recent fall.  *A.R.* 118.  On September 13, 2004, The Community Health Center also treated plaintiff for uncontrolled hypertension.  *A.R.* 117.

On October 4, 2004, an MRI revealed diffuse disc bulges in plaintiff's lower back, with mild-to-moderate narrowing of the neural foramina bilaterally.  *A.R.* 112. On October 20, 2004, a physician with The Community Health Center opined that plaintiff "is unable to maintain her current level of work due to pain & weakness."  *A.R.*

3

111.

On November 22, 2004, plaintiff complained that she had experienced dizziness at work and that her hands felt numb. *A.R.* 114.

After experiencing chest pain, plaintiff was hospitalized on August 18, 2005. *A.R.* 138, 169. She was diagnosed with a myocardial infarction and severe coronary artery disease. She underwent a triple coronary artery bypass and was discharged on August 26, 2005. *A.R.* 138-139. One month later, plaintiff reported no chest pain or discomfort. *A.R.* 141. Her treating doctor, C.B. Sai Sudhaker, MBBS, FRCS, noted that she "has been doing extremely well following her discharge," that her vital signs were normal and that he was "very pleased with the progress she has made[.]" *Id*.

An October 2005 stress cardiolite study showed normal myocardial perfusion, no coronary ischemia and a normal left ventricular ejection fraction. No previous myocardial infarction was noted. *A.R.* 164.

A stress test performed on January 23, 2006, revealed mild inducible ischemia in the anterior wall region, mildly reduced ventricular systolic function and mildly reduced exercise capacity. *A.R.* 163.

On January 24, 2006, plaintiff was discharged from cardiac rehabilitation: "[Plaintiff] Dorothy [Braoudakis] came to 7 sessions of cardiac rehab, went on vacation to New York and did not return to rehab despite our calls to return." *A.R.* 160. Plaintiff was given a list of cardiac wellness classes and "encouraged to attend any additional cardiac wellness educational workshops offered[.]" *A.R.* 161.

On May 31, 2006, Sushil M. Sethi, M.D., performed a consultative

examination at the request of the state agency. *A.R.* 143-145. Plaintiff appeared "well-built, well-nourished and in no acute distress." *A.R.* 144. Dr. Sethi noted regular heartbeats with no murmurs or gallop rhythm. *Id*. He also noted mild tenderness in plaintiff's both knees with flexion to 120 degrees, but no extension. *Id*. She had normal range of motion in her ankles and was able to walk on tiptoes and heels; she could squat halfway. *Id*. Her gait was normal and she used no ambulatory aids. *Id*. Her upper extremities showed moderate tenderness anteromedially in both shoulders. *A.R.* 145. Examination further revealed moderate bilateral tenderness in her lumbosacral spine with limited range of motion. *Id*. Plaintiff had normal motor and sensory testing. *Id*. Dr. Sethi further noted plaintiff's history of coronary bypass surgery, hypertension and chronic disc bulges with no neuromuscular deficits. *Id*. Dr. Sethi concluded that plaintiff's "ability to do work-related physical activities such as sitting, standing, walking, lifting, carrying and handling objects and traveling is quite limited. Her hearing and speaking is normal." *Id*.

On June 19, 2006, pulmonary physiology testing revealed that plaintiff's "[l]ung volumes and spirometry are probably within normal limits." *A.R.* 158. However, she had a "significant response to the one-time use of a bronchodilator." *Id*.

An echocardiogram on August 16, 2006, showed that plaintiff had normal left ventricular systolic function and aortic sclerosis. *A.R.* 154.

In August 2006, Kenneth Doolittle, M.D., an orthopedic surgeon

5

who saw plaintiff on one occasion, reported to the state agency that plaintiff complained of mild pain in her left knee and her right shoulder, accompanied by loss of motion.  *A.R.* 178.

On September 5, 2006, plaintiff was admitted to the hospital after experiencing dizzy spells and a true syncope while walking.  *A.R.* 216.  It was noted that she had hyperglycemia with a markedly elevated hemoglobin.  *Id*.  A chest x-ray showed no active disease and a CT head scan and echocardiogram were normal.  *A.R.* 217.  Plaintiff was diagnosed with orthostatic hypotension secondary to dehydration, electrolyte imbalance, hypertension, hypertensive heart disease, status post myocardial infarction with coronary artery bypass graft in October 2005, diabetes mellitus (new onset), hyperlipidemia, sleep apnea and depression.  *Id*.  Plaintiff was discharged on September 8, 2006.  *Id*.

In October 2006, Charles M. Derrow, M.D., reviewed the record for the state agency and opined that plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk for a total of 6 hours, and could occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl; she could push or pull without limit.  *A.R.* 181-182.  He saw "no basis for a less than light exertional restriction upon ambulation or any other physical activity.  A straight 'light' RFC seems to me to be a better way to go."  *A.R.* 188.

On May 31, 2007, plaintiff began treating with Jeffrey Spencer, M.D., an internist.  *A.R.* 192.  Upon examination, Dr. Spencer noted that plaintiff complained of pain in her knees, right shoulder, arm and back.  *Id*.  He also noted that her feet were "ok" and that she had no neuropathy.  *A.R.* 193.  On June 22, 2007, plaintiff complained of

dizziness. *A.R.* 191, 193. Examination revealed that plaintiff had 96 percent oxygenation, establishing that desaturation was not contributing to plaintiff's dizziness. *A.R.* 193. Dr. Spencer noted that plaintiff's chest was clear and her abdomen was "fine," as were the thyroid and cartilage; there was no edema. *Id*.

Plaintiff reported to the emergency room on September 24, 2007, complaining of low back pain and numbness in her hands. *A.R.* 175.

On January 7, 2008, Dr. Spencer treated plaintiff for a "very slight bladder infection." *A.R.* 189. He further noted that her chest was clear, her thyroid and aorta were "fine" and that plaintiff was "doing fine." *Id*.

Plaintiff was hospitalized on January 31, 2008, complaining of dizziness, shortness of breath and vomiting after a recent fall during which she lost consciousness and hit her head. *A.R.* 195-196, 208. A chest x-ray and a CT scan of the brain were negative. *A.R.* 201-202. Holter monitor testing revealed very rare isolated ventricular and supraventricular ectopic beats. *A.R.* 194. On February 2, 2008, she was discharged with diagnoses of fall with loss of consciousness, hypokalemia, cardia arrhythmia, diabetes mellitus, type 2, and coronary artery disease. *A.R.* 208.

On April 7, 2008, Dr. Spencer commented that plaintiff's thyroid was "ok" and that all major arteries were "clear;" plaintiff reported no recent chest pain or pressure. *A.R.* 189.

A dermatologist examined plaintiff on April 23, 2008, and diagnosed papular rosacea with persistent erythema. *A.R.* 212. In a follow-up appointment in August 2008, plaintiff's erythema of the face had improved and there were no papules present. *A.R.* 213.

On January 19, 2009, plaintiff presented to an emergency room, complaining of chronic back pain. *A.R.* 213-215. Plaintiff specifically complained of pain radiating down her right leg and causing numbness in her toes. *A.R.* 213. An x-ray of the lumbar spine showed degenerative changes in the lower thoracic spine. *A.R.* 232. Plaintiff was diagnosed with chronic low back pain and left radicular symptoms. *A.R.* 215.

In April 2009, Dr. Spencer, plaintiff's treating internist, completed a physical and mental functional capacity evaluation in which he indicated that, throughout an eight-hour workday, plaintiff could stand / walk for up to two hours (up to 30 minutes without interruption) and could sit for up to two hours (up to 30 minutes without interruption). *A.R.* 228-231. According to Dr. Spencer, plaintiff's capacity for making occupational adjustments, intellectual functioning and making personal and social adjustments is fair. *A.R.* 228-229. He also found that she could lift up to six pounds occasionally; she could occasionally climb, balance, stoop, crouch, kneel and crawl; she could also occasionally reach, handle, push/pull and could perform fine manipulation and gross manipulation. *A.R.* 230-231. He believed that plaintiff experienced moderate pain and that she needed additional rest breaks and a sit/stand option. *A.R.* 231. According to Dr. Spencer, plaintiff "is not even close to working and, if she tried to work, would not be able to work a single whole day." *Id.*

At the administrative hearing, plaintiff testified that she experienced constant back pain that extends down both legs. *A.R.* 265. She described the pain as seven on a scale of one to ten; the pain

limits her ability to sit normally for a period of 30 to 45 minutes. *A.R.* 265, 267. She estimated that she could stand/walk for 30 minutes at a time and could lift and carry ten to fifteen pounds. *A.R.* 267-268.

In addition to her back pain, plaintiff testified that she takes nitroglycerin twice a day for chest pain. *A.R.* 268-269. Stress or over-exertion can trigger the pain, which she rates as five on a scale of one to ten. *A.R.* 269-270.

Plaintiff is able to take care of her personal hygiene, make her bed and prepare her own meals. *A.R.* 276. She walks once or twice a day for about five to six blocks before needing to sit down. *A.R.* 275-276. She also helps her daughter with household chores two to three times a week, including dusting, vacuuming, dust mopping and feeding the cats and dogs. *A.R.* 277-278. She also helps with grocery shopping, but must sit down while shopping. *A.R.* 278. Plaintiff's hobbies include watching television and reading suspense/mystery novels. *Id*. Since August 2005, she has taken three trips by train to New York to visit relatives. *A.R.* 252.

Vocational expert Rosenthal characterized plaintiff's past employment as: (1) housekeeper, which requiredg light exertion at the unskilled level; (2) caterer/helper, which required light exertion at the limited semi-skilled level; (3) supervisor of food services, which required light exertion at the skilled level; (4) retail cashier, which requiredg light exertion; (5) cashier at a service station, which required light exertion at the unskilled level; (6) child monitor, which required medium exertion at the limited semi-skilled level; (7) fast food worker, which required light exertion at the

9

unskilled level; (8) food assembly and prep worker, which required light exertion at the limited semi-skilled level; (9) janitor, which required medium exertion at the limited semi-skilled level; and (10) supervisor of housekeeping, which required medium exertion. *A.R.* 288-289.

The administrative law judge asked the vocational expert to assume a claimant with plaintiff's vocational profile and the residual functional capacity articulated by Dr. Derrow.  *A.R.* 180-189, 290. In response, the vocational expert testified that such a claimant could perform plaintiff's past work of food assembly, retail cashier and cashier at a service station.  *A.R.* 290.  The articulated residual functional capacity would not permit the performance of plaintiff's other light jobs, because those jobs involve balancing, stooping, kneeling, occasional stairs, crouching and crawling.  *Id*.  If the claimant were limited to only sedentary work, the vocational expert testified, the claimant could not perform any of plaintiff's past jobs.  *Id*.

In her decision, the administrative law judge found that plaintiff's severe impairments consist of lumbar degenerative disc disease, diabetes mellitus, AHSD, status post myocardial and three vessel coronary artery bypass graft, hypertension, hyperlipidemia, rosacea and mild obesity.  *A.R.* 17.  The administrative law judge also found that plaintiff's impairments neither meet nor equal a listed impairment.  *A.R.* 22-23.  The administrative law judge went on to find that plaintiff has the residual functional capacity to perform a reduced range of light work with the following restrictions:  She may lift/carry twenty pounds occasionally and ten pounds frequently; can

stand and/or walk for six hours in an eight-hour workday; can sit for a total of six hours in an eight-hour workday; can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl, but can never climb ladders, ropes or scaffolds.  *A.R.* 23-29.  Relying on the testimony of the vocational expert, the administrative law judge further found that plaintiff's residual functional capacity does not preclude her ability to perform her past relevant work as a food assembler, service station cashier and retail cashier.  *A.R.* 29-30.  Accordingly, the administrative law judge concluded that plaintiff is not disabled within the meaning of the Social Security Act.  *A.R.* 30.

In her *Statement of Errors*, plaintiff argues that the medical evidence establishes a residual functional capacity to perform no more than sedentary activity.  In so arguing, plaintiff contends that the administrative law judge failed to accord appropriate weight to the findings and opinions of the treating and examining sources.  Plaintiff specifically challenges the administrative law judge's assessment of the opinions the Community Health Center physicians, of Dr. Sethi, and of Dr. Spencer.

Opinions of treating physicians must be accorded controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and not "inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2).  Therefore, the administrative law judge must provide "good reasons" for discounting the opinions of a treating physician, *i.e.*, "reasons that are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that

11

weight.'"  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5).

In the case presently before the Court, the administrative law judge rejected the October 20, 2004 opinion of plaintiff's treating physician at the Community Health Center, *i.e.*, that plaintiff "is unable to maintain her current level of work due to pain & weakness." *A.R.* 24, 111. However, the administrative law judge noted that plaintiff was still working during this time (and up until August 2005, *see A.R.* 44) and noted, too, that the physician provided no function-by-function limitations.  Under these circumstances, the administrative law judge properly found that this opinion was based solely on plaintiff's subjective complaints and therefore rejected the opinion.  *A.R.* 24, 59, 111.  Accordingly, the administrative law judge's finding in this regard enjoys substantial support in the record.

The administrative law judge likewise accorded little weight to the May 2006 opinion of Dr. Sethi, the consultative examining physician who opined that plaintiff's "ability to do work-related physical activities . . . is quite limited."  *A.R.* 145. The administrative law judge characterized this opinion as vague and inconsistent with the medical evidence of record.  *A.R.* 24. Again, there is substantial support in the record for this finding.  Dr. Sethi provided no function-by-function assessment of plaintiff's limitations and his opinion that plaintiff is "quite limited" is indeed vague.   Moreover, as the administrative law judge properly noted, Dr. Sethi's opinion that plaintiff is "quite limited" in her ability to travel is inconsistent with plaintiff's own testimony that

12

she traveled to New York by train on three occasions between August 2005 and April 2009.  *A.R.* 24, 145, 252.  There is substantial support in the record for the administrative law judge's assessment of Dr. Sethi's opinion.

Similarly, the administrative law judge gave no significant weight to the opinion of Dr. Spencer, plaintiff's treating internist who opined that she "would not be able to work a single whole day," because it was inconsistent with the evidence.  *A.R.* 24-25, 231.  For example, Dr. Spencer opined that plaintiff could sit, stand or walk for no more than four hours during the day, *A.R.* 228-31; yet his examination notes indicate generally normal findings.  *A.R.* 189-193.  Moreover, Dr. Spencer opined that plaintiff had severe reactive depression, *A.R.* 231, yet he is not a mental health specialist and his treatment notes do not reflect diagnosis or treatment of this condition.  *A.R.* 25, 189-194.  Accordingly, the administrative law judge did not err in according no significant weight to the opinion of Dr. Spencer.

Finally, plaintiff argues that the administrative law judge erred in accepting Dr. Derrow's residual functional capacity assessment.  Plaintiff specifically contends that this assessment is inconsistent with the record as a whole because it was proffered on October 6, 2006, two and a half years before plaintiff's administrative hearing and without the benefit of the records from Dr. Spencer and other records.  However, the administrative law judge specifically considered this fact, finding that the evidence received into the record after Dr. Derrow's assessment would not alter this doctor's findings concerning plaintiff's physical limitations.  *A.R.* 24.

Moreover, plaintiff fails to cite to any specific, credible evidence in these later records that would alter Dr. Derrow's findings. In light of the inconsistencies contained in and the weaknesses of Dr. Spencer's records and opinion, for example, plaintiff has not shown that the administrative law judge's finding in this regard is not supported by substantial evidence.

It is therefore **RECOMMENDED** that the decision of the Commissioner be affirmed and that this action be dismissed.

If any party seeks review by the District Judge of this *Report and Recommendation,* that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation,* specifically designating this *Report and Recommendation,* and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1); F.R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy thereof. F.R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Smith v. Detroit Federation of Teachers, Local 231 etc.*, 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

    *s/Norah McCann King*
Norah M<sup>c</sup>Cann King
United States Magistrate Judge

February 7, 2011

15